The facts are stated in the opinion by THOMPSON, J., of the court below, as follows:
The trial of this case resulted in a verdict of $5,000.00 in favor of the plaintiff and against all of the defendants. The case was based on an alleged libel, which was in the form of a resolution passed at a State convention of the State Fraternal Order of Police, a corporation incorporated by the courts of Dauphin County, Pennsylvania, and having its principal office in Harrisburg in that County. On June 10, 11 and 12, 1940, a State convention was held at the Berkshire Hotel, Reading, Pennsylvania, under the auspices of the State Fraternal Order of Police and consisted of delegates from the subordinate *Page 365 
lodges of the Fraternal Order of Police located throughout the State of Pennsylvania, which delegates were also members of the State Fraternal organization. On June 12, 1940, the convention adopted a resolution, which reads as follows:
"Whereas, James J. Regan, Jr., has heretofore claimed and represented that he is Special Counsel for the Fraternal Order of Police, and
Whereas, The said James J. Regan, Jr., has published and circulated certain cards and other communications in which he has made improper use of said pretended authority of Special Counsel for the purpose of promoting his candidacy for the office of member of the General Assembly of the Commonwealth of Pennsylvania to the great embarrassment and prejudice of the Pennsylvania State Lodge, Fraternal Order of Police and its constituents, and
Whereas, the conduct and acts of the said James J. Regan, Jr., are unethical and are calculated to create a false impression as to his true relationship with the Fraternal Order of Police, now, therefore, be it
Resolved, That the Pennsylvania State Lodge, Fraternal Order of Police, in Convention assembled, does hereby condemn said acts on the part of said James J. Regan, Jr., as false, fraudulent, unfair and improper and does hereby disclaim any and all contact association of the said James J. Regan, Jr., with the Pennsylvania State Lodge, Fraternal Order of Police, or any of its local lodges, is hereby definitely determined and ended and that James J. Regan, Jr., shall have no connection with or power from the Fraternal Order of Police or any branch or part thereof, and be it further
Resolved, That a copy of this resolution be sent to the Mayor of the City of Philadelphia, and a copy sent to the Director of Public Safety of the City of Philadelphia."
The plaintiff avers that he is an attorney at law and a member of the Philadelphia Bar, of the Bar of the *Page 366 
Supreme Court of Pennsylvania and of the Supreme Court of the United States of America, and was a Vice-President, Director, Dean of, and a teacher of law on the faculty of the Philadelphia College of Law; that he, in his profession in the past, had been entrusted with various duties in connection with the administration of trusts and as an officer and director of corporations; that he had been a candidate for public office and in the year 1934 was a candidate for both the Democratic and Republican nominations for the office of Judge of the Superior Court of Pennsylvania and had received a total of 297,675 votes for the office of which 221,192 were received of fellow-citizen Republican voters and 76,483 were received of fellow-citizen Democratic voters and of which 40,834 votes were received of the plaintiff's fellow-citizens within the City and County of Philadelphia. Plaintiff further avers that all the defendants were police officers in the City of Pittsburgh except Michael Burns and Chester Zygello, who were police officers of the County of Allegheny, and that all of the defendants were members of the Pennsylvania Lodge, Fraternal Order of Police, a Pennsylvania corporation incorporated at Harrisburg; that he had been engaged as special counsel for the Pennsylvania State Lodge, Fraternal Order of Police for the purpose of organizing Philadelphia Lodge No. 5, Fraternal Order of Police, a local subordinate lodge of said corporation and in the course of his representation of said corporation had received approximately $7,500.00 for and on behalf of said corporation; that he was also in the year 1939 by written contract engaged as special counsel for the Fraternal Order of Police for the purpose of assisting said corporation in the organization of local subordinate lodges in Bucks, Chester, Montgomery and Delaware counties in the State of Pennsylvania and was also engaged in securing the charter for the State of Pennsylvania, Fraternal Order of Police; that the said defendants as members of the annual State convention of the Fraternal *Page 367 
Order of Police at Reading in June 1940, had maliciously and wickedly contrived to injure the plaintiff, exposing plaintiff to public contumely and scorn in the presence and hearing of the general public and guests at said hotel and afterward on the floor of the convention in the ballroom of the hotel; that the words of the resolution passed by the convention charged him with being a dishonest and dishonorable man and guilty of unprofessional acts in the conduct of his profession and further by the use in said resolution of the terms "as false, fraudulent, unfair and improper" thereby charged that the plaintiff was guilty of the commission of seven different crimes, felonies and misdemeanors, which the plaintiff described at length in Paragraph Tenth of the declaration by reference to the various sections of the Criminal Code of Pennsylvania and including "felony of embezzlement by attorney," "felony of embezzlement by officer or director or attorney, etc., of a corporation," "felony of embezzlement by trustee of any property for the benefit of some other person," "felony of fraudulent conversion of property," "felony of cheating by false and fraudulent pretenses," "the misdemeanor of making or rendering as an officer, director, or attorney for a corporation false and fraudulent accounts" and "the misdemeanor of publishing, circulating or printing as officer, director or attorney for a corporation, false statements with intent to deceive or defraud."
One of the defendants, Chester Zygello, was in the armed forces of the United States at the time of trial and was, therefore, eliminated as one of the defendants at this trial.
The plaintiff testified that during the progress of the convention a group containing some of the defendants, to wit, Fogarty, McCullough and O'Toole, were present on the mezzanine floor of the Berkshire Hotel discussing the presentation of the proposed resolution to the Resolution Committee and that the defendant, O'Toole, in commenting on the proposed resolution and in the *Page 368 
presence of the other two defendants named, said: "We want to get rid of Regan and we want to see he is smeared all over America."
All of the defendants took some part either by moving, seconding or voting in the passage of the offending resolution, but two of the defendants had never seen the plaintiff until the trial of this case began, and had never had any transactions of any kind with him.
It developed in the testimony that while a local Fraternal Order of Police had been incorporated in the year 1915 by the Court of Common Pleas of Allegheny County and had thereafter functioned successfully in Allegheny County, that there had been no organization of the Fraternal Order of Police in Philadelphia until about the year 1939, and that the reason for this was that the Mayor and other public authorities of Philadelphia had been opposed to an organization of the police of this character because of their fear that it would become involved in politics. After a great deal of effort this fear on the part of the Philadelphia municipal authorities was quieted down, and this was due in part to the successful non-partisan organization of the Pittsburgh corporation of Fraternal Order of Police. As a result, an ordinance of the City of Philadelphia forbidding the police of that city to combine in a fraternal police organization was repealed, and the way was then open for the creation of a local fraternal organization in Philadelphia.
The plaintiff was employed to organize a Philadelphia Police Fraternal organization and succeeded in that effort and was paid $1.00 for each member secured for that organization. Later, the plaintiff became counsel for the State organization of police and also the National Fraternal Order of Police. In the year 1940, the plaintiff became a candidate for the Democratic nomination for the State Legislature in a district comprising certain wards in the City of Philadelphia, and in the course of his campaign a postcard was circulated bearing *Page 369 
on one side plaintiff's picture, and on the other side the following statement:
"Dear Friend:
You are the party worker of great power and influence among your friends and neighbors in your division.
In the 22nd Legislative District (Wards 27, 40, 46 and 51) the votes of your large personal and political following are respectfully solicited for a Democratic representative.
James J. Regan, Jr., Dean of the Philadelphia College of Law and Special Counsel for the Fraternal Order of Police, who recognizing you will support your friends and your policies.
 Cordially yours, James J. Regan, Jr."
It was the contention of the defendants that this postcard, which it was charged was widely circulated in Philadelphia, disturbed the public authorities of the City and resulted in Lodge No. 5 of the Fraternal Order of Police being called to account for engaging in politics, since it was well known that the plaintiff had brought about the organization of Lodge No. 5 and had been counsel for the State and National organizations of the police.
The defendants claim that it was to allay the criticism to which the Philadelphia Police organization had been subjected, by reason of the political activity of their counsel, that the resolution adopted by the State convention was passed, and it was provided at the end of the resolution that a copy of it be sent to the Mayor and the Director of Public Safety of Philadelphia.
It appears in the course of the testimony that the plaintiff now has a suit pending in the City of Philadelphia against a certain number of the Philadelphia police, who also took part in the passage of this resolution. The defendants now on trial had no direct concern with what was taking place in Philadelphia aside *Page 370 
from their interest in the order generally and their desire to help out their Philadelphia associates in a difficulty affecting their organization. There is no evidence other than the one statement quoted above and attributed to the defendant, O'Toole, that indicates that any of the defendants had any personal animosity against the plaintiff.
The Trial Judge instructed the jury that the defendants enjoyed a qualified privilege in connection with their communications as members of the convention of the Police Fraternal Order, and reference was made to the Act of April 11, 1901, P. L. 74, which in Section 3 provides: "In all civil actions for libel no damages shall be recovered unless it is established to the satisfaction of the jury under the direction of the Court, as in other cases, that the publication has been maliciously or negligently made, but where malice or negligence appear such damages may be awarded as the jury shall deem proper."
Under the evidence, it seems to us, that even though the resolution of the convention was privileged in a qualified way, there was a question for the jury as to whether the privilege had been abused by the publication having been either "maliciously or negligently made," and there was evidence for the consideration of the jury on those points.
In view of this conclusion, the motion for judgment N. O. V. must, therefore, be refused.
We pass then to the motion for a new trial. The usual formal reasons are given including the reason that the verdict is excessive, and in addition it is stated that the Court erred in certain rulings on questions of evidence and in rulings on several points for binding instructions and in the charge to the jury. No errors on questions of evidence have been specified or errors in the charge, so that the remaining question concerns the excessiveness of the verdict, which was for the sum of $5,000.00 against all of the defendants. *Page 371 
Although two of the defendants never knew the plaintiff or saw him until the day of trial and had only a formal part in the passage of the resolution, they are held liable under the verdict in the same amount as the other defendants, who had a more active part in the passage of the resolution.
The plaintiff has not proven any special damage, and it does not appear that his position as the Dean of Philadelphia College of Law has been in any way jeopardized, or that his political activity has come to an end since it developed in the course of the testimony that he was a candidate for Governor of the State of Pennsylvania at the last election. As to the declaration alleged to have been made by the defendant, O'Toole, on the mezzanine floor of the Berkshire Hotel, it is flatly denied by all the defendants who were present that any such gathering or conversation took place, and several witnesses testified on that point as against the sole testimony of the plaintiff. It seems to us that the plaintiff cannot escape some responsibility for subjecting the police of Philadelphia to criticism by reason of his own political activity.
The plaintiff received substantial compensation for the services rendered in connection with the organization of Philadelphia Lodge No. 5. He was well aware of the delicate situation which existed because of the ordinance of the City of Philadelphia and the fear of the public authorities that an organization of policemen might be utilized for political purposes. In view of his position as counsel for this organization, the plaintiff, it seems to us, was under a special obligation to exercise care to avoid bringing down criticism upon his clients.
If any recovery is allowable in this action, it seems to us that it should not be more than a token sum and an order, therefore, will be made granting a new trial unless the plaintiff stipulates in writing within fifteen days to accept the sum of $500.00 in lieu of the verdict. In the event that such stipulation is filed, judgment will *Page 372 
be entered in favor of the plaintiff and against the defendants in the sum of $500.00.
Plaintiff appealed.
The judgment is affirmed on the opinion of Judge THOMPSON of the Court below.